IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 16, 2020 Session

**STATE OF TENNESSEE v. DOUGLAS M. FERGUSON**

**Appeal from the Criminal Court for Sullivan County**
**No. S65388    James F. Goodwin, Jr., Judge**

---

**No. E2019-02218-CCA-R3-CD**

---

The Defendant, Douglas M. Ferguson, was convicted of two counts of aggravated assault, a Class C felony, and was sentenced to five years' probation. *See* T.C.A. § 39-13-102 (2018). Subsequently, the trial court found the Defendant violated conditions of his probation and ordered him to serve his sentence in confinement. On appeal, the Defendant contends that the trial court erred by ordering the Defendant to serve the remainder of his sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Andrew Gibbons, District Public Defender; Patrick S. Rader, Assistant Public Defender — Appellate Division (on appeal); and Lesley A. Tiller, Assistant Public Defender (at probation revocation hearing), for the appellant, Douglas M. Ferguson.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Barry P. Staubus, District Attorney General; and P. Michael Filetti, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This appeal arises from a consolidated hearing, at which the trial court sentenced the Defendant for a 2018 aggravated assault conviction and revoked the Defendant's probation for an aggravated assault sentence imposed in 2017. On January 30, 2017, the Defendant was convicted of two counts of aggravated assault and was sentenced to five years' probation. A violation of probation warrant was issued on July 2, 2018, alleging that the Defendant violated the terms of his probation by committing the attempted first

degree murder of David Wade Ferguson, the victim, who was the Defendant's son and neighbor.

The facts of the jury trial for the attempted murder showed that on June 28, 2018, the Defendant, while armed with a chainsaw, approached the victim, who was driving a riding lawn mower. The Defendant attempted to strike the victim with the chainsaw. As the victim struggled to get away from the Defendant, the Defendant was run over by the lawn mower, which resulted in the loss of one of the Defendant's legs. The Defendant was convicted of aggravated assault. The trial court held a consolidated hearing to consider the Defendant's probation violation and to sentence the Defendant for the new aggravated assault conviction.

At the November 21, 2019 consolidated hearing, the victim testified that the Defendant had been his neighbor for approximately twenty-eight years. The victim explained that his relationship with the Defendant was "negative," and the Defendant was "very aggressive." The victim explained that as neighbors, he and the Defendant had property line disputes and animal control issues. He said that the Defendant normally initiated the altercations and that the Defendant made threats against the victim. The victim said the events on June 28, 2018, involving the Defendant increased the victim's fear of the Defendant and said if the Defendant were released, then the victim would fear retaliation from the Defendant. The victim said that for the past twenty-eight years, the Defendant had been confused, paranoid, and showed symptoms of dementia. The victim said he owned a fourteen-acre parcel of land which the Defendant mistakenly believed the Defendant owned. The victim said the Defendant also believed that power lines on the property killed the Defendant's animals.

Susan Ferguson, the victim's wife, testified that over the years she had negative interactions with the Defendant and that those interactions had "increased in violence." Ms. Ferguson explained the Defendant often stood at the fence dividing their property, shaking his fist and behaving in a threatening manner. She said that she witnessed the June 2018 incident with the Defendant and that she believed the Defendant was going to kill the victim. Ms. Ferguson said that she would not feel safe if the Defendant were released because the Defendant mistakenly believed he owned the land and that she believed the Defendant would return to the victim's property to take what the Defendant thought was his. Ms. Ferguson said that the Defendant had no remorse and that her and Mr. Ferguson's relationship with the Defendant was "beyond repair." Ms. Ferguson said she believed that the Defendant's former wife, who divorced the Defendant after the June 2018 incident and subsequently died, had a negative effect on the Defendant and that she "fueled the fire." Ms. Ferguson agreed that the Defendant showed symptoms of confusion and dementia.

Donovan Ferguson testified that the victim and Susan Ferguson were his parents. Donovan[1] said that the conflict between the Defendant and the victim had been going on since Donovan was a small child but that the tensions escalated, becoming more frequent and aggressive over the two years leading up to the June 2018 incident. Donovan said that he witnessed the June 2018 incident and that he believed the Defendant was going to kill the victim. Donovan said if the Defendant were released, then he would not feel safe and would worry about the safety of his parents. Donovan said that during the Defendant's former wife's lifetime, she instigated some of the conflict between the Defendant and the victim. Donovan said the Defendant showed signs of confusion and dementia and had fixations regarding the property.

Neta Brooks, Ms. Ferguson's mother, testified that for the past thirteen years, she was the victim and Ms. Ferguson's neighbor. She said she knew the Defendant because he often stood at the fence on the Fergusons' property. Ms. Brooks said the Defendant believed he owned Ms. Brooks's property. She said she was afraid of the Defendant because he was "always doing something" to the Fergusons. Ms. Brooks said that she did not witness the June 2018 incident but that based on what she learned subsequently, she would not feel safe if the Defendant were released. Ms. Brooks said the Defendant believed he had a right to drive down Ms. Brooks's driveway. Ms. Brooks said that the Defendant's former wife instigated the Defendant's behavior and that his confusion was worse during the two years before the June 2018 incident.

Ronald Rosenbalm testified that he was the Defendant's neighbor. Mr. Rosenbalm said the Defendant offered to purchase Mr. Rosenbalm's property, but Mr. Rosenbalm refused. He said the Defendant was angry at Mr. Rosenbalm's refusal, and the refusal resulted in conflict with the Defendant for twenty-five years. Mr. Rosenbalm said the Defendant harassed and stalked him. Mr. Rosenbalm said that in 2010, the Defendant walked onto Mr. Rosenbalm's property and punched Mr. Rosenbalm's wife, Marilyn Rosenbalm. Mr. Rosenbalm said the Defendant was arrested and later agreed to a no-contact order with the Rosenbalms. Mr. Rosenbalm said he built a 220-foot fence between their two houses so that his wife could work in the yard without the Defendant's harassing her. Mr. Rosenbalm said there was another incident involving the Defendant in 2015. Mr. Rosenbalm explained that he and his wife were building a fence in their front yard when the Defendant approached them, grabbed Mr. Rosenbalm, grabbed Ms. Rosenbalm by the hair, slung her around, and scratched her neck. Mr. Rosenbalm said he and his wife would not feel safe if the Defendant were released.

Marilyn Rosenbalm testified that in 2010, the Defendant walked onto her family's property and punched her face. She said that she sustained a broken nose and an injured mouth and explained that this resulted in an agreed no-contact order with the Defendant.

---

[1] Because several witnesses have the same surname, we will refer to Donovan Ferguson by his first name. We intend no disrespect.

Ms. Rosenbalm said the Defendant did not comply with the order. She said that in 2015, while she and Mr. Rosenbalm were putting up a fence on their property, the Defendant approached them and grabbed Mr. Rosenbalm's hair. Ms. Rosenbalm got closer to check on her husband, and the Defendant grabbed her hair. She said the Defendant scratched her neck. Ms. Rosenbalm said that she felt safe on her property because the Defendant was in jail but that she feared conflict would escalate if the Defendant were released. Ms. Rosenbalm said that the Defendant's confusion had become worse and that the Defendant's former wife instigated some of his previous behavior. Ms. Rosenbalm said that since the Defendant's 2017 conviction, the Defendant had not contacted her.

The Defendant testified that he was age seventy-seven. He said that he worked for Bristol, Tennessee Electric System from 1964 to 1982, when he began working for the city of Bristol, Virginia. He said he retired in 2007. The Defendant said he was married to Helen Ferguson, they divorced after his 2017 conviction, and she was now deceased. The Defendant said that he suffered an injury in June 2018 that resulted in the loss of his leg and that he had two stents in his heart. The Defendant said he desired to have physical therapy to help him with his prosthetic leg. He said that he wanted to travel to the Grand Canyon and Yellowstone Park. The Defendant stated he believed he owned the property on which the victim lived and the property on which Ms. Brooks lived. The Defendant confirmed that his criminal history included the 2010 incident with the Rosenbalms and his 2017 aggravated assault convictions. The Defendant stated that on June 28, 2018, he did not attack the victim with a chainsaw. The Defendant explained that he was sawing brush away near his fence when he was hit by a lawn mower. The Defendant said that he frequently used a chainsaw during his career and that if he intended to harm a person with a chainsaw, then the person would have injuries. The Defendant said he never attacked anyone with a chainsaw. The Defendant said if he were released, then he would abide by the court's release conditions and would not return to the property he believed he owned. The Defendant said he would remain at his new residence and not bother anyone. The Defendant said that he would not contact the victim and his wife, Ms. Brooks, or the Rosenbalms, but he would hire a lawyer to help him regain his property. The Defendant said he had talked with several lawyers about suing the federal government regarding power poles on the victim's property. The Defendant said that he did not punch Ms. Rosenbalm in 2010, that he did not grab either Mr. Rosenbalm or Ms. Rosenbalm in 2015, and that he did not attack anyone with a chainsaw in 2018.

Douglas Wayne Ferguson, the victim's twin brother, testified that during the past twenty-five years, the Defendant had become increasingly obsessed with the property lines, fences, and utility poles. Mr. Ferguson said that the Defendant had sought legal counsel from multiple attorneys regarding the property. Mr. Ferguson said he believed the Defendant's former wife took advantage of the Defendant and instigated the conflict. Mr. Ferguson said if the Defendant were released on alternative sentencing, then the Defendant

would live in a trailer owned by Mr. Ferguson. He said he would ensure the Defendant complied with any rules of probation.

At the conclusion of the hearing, the trial court revoked the Defendant's probation for the 2017 aggravated assault convictions and ordered him to serve the balance of his five-year sentence. The court also ordered the Defendant to serve a five-year sentence for his 2018 aggravated assault conviction consecutive to the violation of probation for the 2017 aggravated assault convictions.[2] This appeal followed.

The Defendant contends that the trial court abused its discretion when it ordered the Defendant to serve the remainder of his probated sentence in confinement. The Defendant argues that although the court determined that a violation had occurred, the court "treated" full revocation as the automatic result of the Defendant's violation and did not provide any reason for its decision. The State responds that the court did not err by ordering the Defendant to serve the remainder of his sentence in confinement.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *Id*. at 82 (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2019). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (2019), -310 (2019). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 215 Tenn. 553, 387 S.W.2d 811, 814 (Tenn. 1965)).

---

[2] On March 6, 2020, the trial court amended the judgment and ordered the 2018 aggravated assault conviction to run concurrent with the violation of probation for the 2017 aggravated assault convictions.

During the consolidated hearing, the trial court first addressed the sentence for the 2018 aggravated assault conviction. The court considered the evidence presented at the Defendant's trial, the presentence report, the principles of sentencing and arguments made regarding alternative sentencing, the nature and characteristics of the criminal conduct, mitigating and enhancing factors, statistical information provided by the Administrative Office of the Courts of sentencing practices for similar offenses in Tennessee, and the Defendant's testimony. The court acknowledged that the Defendant had prior convictions for assault and aggravated assault and that the Defendant was placed on alternative sentencing for each conviction and was released into the community. The court determined that enhancement factor (1) applied. T.C.A. § 40-35-114(1) (defendant has previous history of criminal convictions or criminal behavior). The court also applied enhancement factor (8) because the Defendant failed to comply with conditions of a sentence involving release in the community. *Id.* at § -114(8). The court applied enhancement factor (10) because the Defendant threatened the victim with a chainsaw. *Id.* at § -114(10). The court applied enhancement factor 13 because the Defendant was released on probation when the new offense occurred. *Id.* § at -114(13). The court found that mitigating factors (6) and (8) applied because of the testimony regarding the Defendant's confusion. *Id.* at § -113(6), (8). The court applied mitigating factor (13) because of the Defendant's work history. *Id.* at § -113(13). The court determined that the enhancement factors significantly outweighed the mitigating factors. The court sentenced the Defendant to five years for the aggravated assault.

In considering whether the Defendant was a good candidate for an alternative sentence for the 2018 aggravated assault conviction, the trial court expressed concern about the Defendant's fixation on property ownership and the Defendant's use of a chainsaw during the incident. The court found no reasonable expectation that the Defendant would stay away from the property and its owners. The court reasoned that, based on the proof, the Defendant could not be expected to abide by the terms of his probation. The court found that measures less restrictive than confinement had been applied unsuccessfully to the Defendant because of the Defendant's "relationship" with the property. The court found that the "negative factors outweigh[ed] the positive factors" and ordered the Defendant to serve his five-year sentence for the 2018 conviction in confinement.

Regarding the violation of probation, the trial court found by a preponderance of the evidence that the Defendant was guilty of violating his probation. The court specifically found that the Defendant violated conditions of probation Rule 1, which states, "I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances," and Rule 14 which states, "I will not behave in any assaultive, abusive, threatening[,] or intimidating behavior. . . . . I will not behave in a manner that poses a threat to others or myself." The court revoked the Defendant's probation and ordered him to serve the balance of his five-year sentence.

Regarding the probation revocation, the Defendant argues that the trial court did not articulate specific findings regarding its decision to order execution of the Defendant's violation of probation sentence. The record reflects, however, that the trial court considered whether the Defendant was a good candidate for alternative sentencing for his new conviction. Whether the Defendant was a good candidate for alternative sentencing is relevant to whether the Defendant was a good candidate for continued probation. The record reflects that the Defendant was placed on probation following his assault on the Rosenbalms based upon the Defendant's unfounded belief that he owned the property. The Defendant violated the terms of his probation by assaulting his son with a chainsaw based on a mistaken belief that he owned his son's property. The record reflects the Defendant continued to "stalk" the Rosenbalms and watch them when they were outside on their property. While the Defendant stated that he would abide by any terms ordered by the court and that he would hire a lawyer to continue his desire to gain ownership of his neighbors' property, the court did not credit the Defendant's assurances. The trial court did not abuse its discretion by ordering the Defendant to serve the balance of his probated sentence. The Defendant is not entitled to relief on this basis.

Based upon the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE